IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VAUGHN W. CHARLTON** and **DEBORAH C. CHARLTON,** | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 09-2447 |
| | : | |
| **RYAN E. GALLO, Individually, RYAN GALLO TREE SERVICE, INC.,** and **GLOBAL TITLE, INC., t/a Global Settlements,** | : | |
| Defendants. | : | |

**Norma L. Shapiro, S.J.**                                                            February 18, 2010

### MEMORANDUM

Plaintiffs moved to dismiss the amended counterclaim of defendants Ryan E. Gallo and Ryan Gallo Tree Service, Inc. (collectively, the "Gallo Defendants"), under Rule 12(b)(6). The Gallo Defendants asserted seven claims against plaintiffs regarding an agreement of sale for property in Chester County, Pennsylvania. After oral argument at which counsel for all parties were heard, this court dismissed all counts of the amended counterclaim by Order dated January 25, 2010, for the reasons that follow. This court has jurisdiction under 28 U.S.C. § 1332.

**I.     BACKGROUND**

When reviewing a Rule 12(b)(6) motion to dismiss, the court must accept as true all allegations in the counterclaim and must provide the counterclaim-plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the pleading. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Accepting as true the allegations of the counterclaims, the pertinent facts were as follows:

Vaughn and Deborah Charlton (the "Charltons"), are citizens of Pennsylvania and owned three pieces of real property located in Chester County, Pennsylvania. Ryan Gallo Tree Service, Inc. ("Tree Service"), is a Delaware corporation that conducts landscaping business in Delaware and Pennsylvania. Ryan E. Gallo ("Mr. Gallo"), is a citizen of Delaware, and owns 100% of the stock of Tree Service.

In August 2006, Tree Service entered into an agreement of sale (the "Agreement") with the Charltons to purchase the three Pennsylvania properties. The total purchase price was $1.25 million. Tree Service and Mr. Gallo financed the entire purchase price through two loans: a loan in the amount of $1 million from Wilmington Savings Fund Society, secured by a first mortgage on the purchased property; and an interest-only balloon note ("Balloon Note") in the amount of $250,000, to the Charltons, secured by a second mortgage on the purchased property and a mortgage on Mr. Gallo's personal residence in Delaware. Even though Tree Service was the only purchaser, both Tree Service and Mr. Gallo were obligors on the Balloon Note.

Closing on the sale of the Pennsylvania property took place November 9, 2006, at the Pennsylvania offices of Global Title, Inc. ("Global"). Global prepared and filed a mortgage to secure the Balloon Note; the mortgage purported to cover the purchased property and Mr. Gallo's personal residence in Delaware. Mr. Gallo denied agreeing to a mortgage on his personal residence. The mortgage securing the Balloon Note was prepared only in the name of Tree Service, and signed by Mr. Gallo on behalf of Tree Service. Tree Service does not hold title to Mr. Gallo's residence.

Under the terms of the Balloon Note, Mr. Gallo and Tree Service were to make monthly interest payments to the Charltons in the amount of $1,875.00 until December 9, 2008, at which time the entire principal balance of $250,000.00 was due to the Charltons. The Gallo Defendants paid interest on the Balloon Note for approximately two years; none of the $250,000 principal has been paid. In 2008, the Charltons filed a

mortgage foreclosure action on Mr. Gallo's residence in the Superior Court of Delaware (No. 08-L-01-127(CLS)). The parties stipulated to dismissal of that action on September 29, 2009.

The Charltons commenced this diversity action by filing a complaint for breach of contract against the Gallo Defendants to enforce the Balloon Note. The Gallo Defendants filed an answer and counterclaim against the Charltons and, after a motion to dismiss, an amended counterclaim. The Charltons moved to dismiss the amended counterclaim under Federal Rule of Civil Procedure 12(b)(6).

While the Charltons' second motion to dismiss was pending, Mr. Gallo filed a voluntary Chapter 7 petition in bankruptcy. Counsel for the Gallo Defendants, asserting that they lacked the authority to do so under the automatic stay, declined to file a response to the Charltons' motion on behalf of Mr. Gallo; counsel also waived Tree Service's right to file a responsive pleading, and asked that the court rely on Tree Service's response to the prior motion to dismiss. Under 11 U.S.C. § 362(a), the filing of a Suggestion of Bankruptcy operates as a stay only of proceedings *against* the debtor. "[W]ithin one case, actions against a debtor are suspended even though closely related claims by the debtor may continue. Judicial proceedings resting on counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings asserted by the plaintiff are stayed." *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991). By Order dated January 25, 2009, the Charltons' claim against Ryan E. Gallo, individually, was severed and stayed. This court has the authority to determine the amended counterclaim brought by the Gallo Defendants.

## II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim and whether the facts as alleged would support relief under the

3

proffered legal theory. *See, e.g., Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2). That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A counterclaim must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-defendant] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

### III. DISCUSSION

A federal district court sitting in diversity must apply the substantive law of the state whose law governs the action. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). The parties agree that Pennsylvania law governs this dispute.

#### A. Fraud in the Inducement

The Gallo Defendants alleged that the Charltons fraudulently induced them to enter into the Agreement with misrepresentations regarding: (1) the "buildability" of the property based on undisclosed wetlands and a protected flood zone; (2) the ease with which the Gallo Defendants could obtain zoning approval for development; (3) Mr. Charlton's relationship with the Township allowing faster zoning approval; and (4) the fair market value of the property. The Charltons asserted these allegations of fraud

were vague, contrary to the express terms of the Agreement, barred by the parole evidence rule, and barred by Pennsylvania's two year statute of limitations.

Fraud in the inducement occurs where "the party proffering evidence of additional prior representations does not contend that the representations were omitted from the written agreement, but, rather, claims that the representations were fraudulently made and that 'but for them' he would never have entered into the agreement." *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002). In Pennsylvania, the parol evidence rule bars evidence of prior representations in a fully integrated written agreement. *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 206-07 (Pa. 2007). Where a written contract contains an integration clause, "the law declares the writing to be not only the best, but the only evidence of [the parties'] agreement." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). The purpose of an integration clause is to give effect to the parol evidence rule: "Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." *Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005).

The Agreement contains a clear and unambiguous integration clause, which states:

> 28. REPRESENTATIONS (9-05).
>
> (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statement or

> conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

In addition, each of the representations the Gallo Defendants complain of are expressly dealt with in the Agreement; for example: paragraph 11 (flood plains and wetlands issues); paragraph 17 (zoning issues); paragraph 27 (release of claims related to conditions of the property); and paragraph 28(B) (property sold as-is).

In *1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 653 A.2d 663, 670 (Pa. Super. Ct. 1995), the plaintiff argued that it was induced to enter a commercial real estate sale contract by the defendant's fraudulent misrepresentations regarding its intention to purchase another parcel of land. The court dismissed this claim, holding that the parole evidence rule applied because the contract between the parties was a fully integrated writing.

The *1726 Cherry Street* court stated that allowing the claim to go forward would permit the plaintiff to do "exactly what the Pennsylvania parol evidence rule forbids: to admit evidence of a prior representation in a fully integrated written agreement." 653 A.2d at 670. The court cautioned:

> If the [plaintiff] intended to rely on what they now contend was a centrally important representation conveyed by [the defendant] in the course of the negotiations over a multi-million dollar commercial real estate transaction, then the [plaintiff] should have insisted that the representation be set forth in their integrated written agreement.

*Id.* The same result is mandated here. Because the parole evidence rule bars the Gallo Defendants' claim for fraud in the inducement, we need not reach the other grounds for dismissal proffered by the Charltons.

Where a party claims fraud in the inducement and the written contract is fully integrated, the parol evidence rule works to bar evidence of any representations made about any matter covered by the agreement prior to the contract's execution. *Hart*, 884 A.2d at 341. Because the parol evidence rule bars evidence of Mr. Charlton's alleged prior fraudulent misrepresentations or omissions, Tree Service's fraud in the inducement claim cannot proceed as a matter of law. Count I of the amended counterclaim has been dismissed.

### B. Fraud in the "Enactment"

The Gallo Defendants alternatively alleged fraud in the execution of the Agreement because they mistakenly believed terms covering buildability and zoning were included in the Agreement.

Fraud in the execution applies to situations where parties agree to include certain terms in an agreement, but such terms are not included, and the defrauded party is mistaken as to the contents of the physical document that it is signing. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996); *1726 Cherry St.*, 653 A.2d at 670. Fraud in the execution of a writing must be proven by clear and convincing evidence. *Trans Penn Wax Corp. v McCandless*, 50 F.3d 217, 232 (3d Cir. 1995).

The Gallo Defendants did not specifically plead that the Charltons promised, or the parties agreed, that guarantees as to zoning or land use would be included in the Agreement but were not. Nor did the Gallo Defendants argue that they bargained for the terms to be included or that they did not understand the language of the Agreement that Tree Service (through Mr. Gallo) read and signed. The Agreement contains specific provisions addressing those issues. No compelling reason is given why the Charltons would have lied to Tree Service, or misled it about what it was signing.

7

The Gallo Defendants concluded that there was fraud in the execution because they were mistaken as to the contents of the Agreement. The Gallo Defendants' allegations describe a claim for fraudulent inducement and not for fraud in the execution. For the reasons stated in Section A, *supra*, Count V of the amended counterclaim fails to state a claim and has been dismissed.

### C. Rescission

The Gallo Defendants claimed that, as a result of the Charltons' alleged fraud with respect to the Agreement, the Gallo Defendants should be relieved of all liability on the related mortgage and Balloon Note.

Rescission is the unmaking of a contract, an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. *Keenheel v. Commonwealth, Pennsylvania Securities Comm'n*, 579 A.2d 1358, 1361 (Pa. Commw. Ct. 1990). To entitle one to relief from his contract on the ground of fraud, all the elements of fraud must exist, and when an essential element is absent, one may not avoid his contract on such ground. 12 P.L.E., CONTRACTS § 85. "Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract." *Snow v. Corsica Constr. Co.*, 329 A.2d 887, 889 (Pa. 1974). The Gallo Defendants did not establish that Tree Service was fraudulently induced to enter the Agreement, so the claim for rescission fails.

Further, rescission is to be granted only where the parties to the contract can be placed in their former positions with regard to the subject matter of the contract. *Sanders v. Lawn Mutual Insurance Co.*, 168 A.2d 758 (Pa. Super. Ct. 1961). Here, the property has been foreclosed upon by a third party and it is not possible to restore each party to its former status. *Sullivan v. Allegheny Ford Truck Sales, Inc.*, 423 A.2d 1292, 1296 (Pa. Super. Ct. 1980). Accordingly, Count II of the amended counterclaim has been dismissed.

### D. Mutual Mistake

The Gallo Defendants alleged that the Agreement should not be enforced as a result of mutual mistake by the parties.

Rule 9(b) provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must plead "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, 'the who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006). "A well-pleaded claim grounded on mistake should include averments of what was intended, what was done, and how the mistake came to be made." 5A Fed. Prac. & Proc. Civ. § 1299 (3d ed. 2009); *see also Reed v. Turner*, 2 F.R.D. 12, 12 (E.D. Pa. 1941).

"Mutual mistake exists where both parties to a contract are mistaken as to the existing facts at the time of execution." *Holt v. Dep't of Public Welfare*, 678 A.2d 421, 423 (Pa. Commw. Ct. 1996). The doctrine only applies where the mistake: (i) relates to the basis of the bargain; (ii) materially affects the parties' performance; and (iii) is not one as to which the injured party bears the risk. *See CONRAIL v. Portlight, Inc.*, 188 F.3d 93, 96 (3d Cir. 1999); RESTATEMENT (SECOND) CONTRACTS, § 152 (1981).

First, the Gallo Defendants claimed that both Tree Service and the Charltons were mistaken as to the actual value of the Pennsylvania property. However, the Gallo Defendants did not allege any support for their blanket assertion that the actual value of the property was significantly less than the contract price. The allegation fails to meet the standard of Rule 9(b).

Second, the Gallo Defendants claimed that both Tree Service and the Charltons believed that Mr. Charlton had the ability to obtain the zoning, variances and permits necessary for Tree Service to use the property in the manner for which the Sale Properties were to be purchased. Erroneous prediction of future events does not qualify as a mistake. *See M. Leff Radio Parts Inc. v. Mattel, Inc.*, 706 F. Supp. 387, 398 (W.D. Pa. 1988); RESTATEMENT (SECOND) CONTRACTS, § 151 cmt. a (1979) ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake'…."). Count III of the amended counterclaim fails to state a claim, and has been dismissed.

### E. Negligence

The Gallo Defendants alleged that the Charltons acted negligently by allowing Global to prepare an inaccurate and ultimately unenforceable mortgage, and by hiring counsel to seek foreclosure on the unenforceable mortgage. The Charltons claimed they could not be vicariously liable to the Gallo Defendants for Global's negligence because Global owed no duty to the Gallo Defendants regarding the mortgage; the Charltons also alleged these claims were barred by Pennsylvania's two year statute of limitations on negligence actions.

A negligence claim fails if the law imposes no duty of care on the defendant. *Gerace v. Holmes Protection of Phila.*, 516 A.2d 354, 358 (Pa. Super. Ct. 1986); *accord Morena v. South Hills Health System*, 462 A.2d 680, 684 (Pa. 1983). The Pennsylvania Supreme Court requires privity of contract between a plaintiff and a defendant-professional for the plaintiff to maintain a professional negligence action. In *Landell v. Lybrand*, 107 A. 783 (Pa. 1919), the plaintiff claimed that he had been induced to purchase stock in a company and that he relied upon reports that had been prepared for the company by the defendant-accountants. The plaintiff brought a negligence action against the defendant-accountants. In response, the Pennsylvania Supreme Court stated:

> There was no contractual relationship between the plaintiff
> and [accountants], and, if there is any liability from them to
> him, it must arise out of some breach of duty, for there is no
> averment that they made the report with the intent to
> deceive him. The averment in the statement of claim is that
> the [accountants] were careless and negligent in making
> their report; but the plaintiff was a stranger to them and to it,
> and, as no duty rested upon them to him, they cannot be
> guilty of any negligence of which he can complain.

*Id*. at 408.

The Pennsylvania Superior Court has adhered to the privity of contract requirement in other professional contexts. In *Linde Enters., Inc. v. Hazelton City Auth.*, 602 A.2d 897 (Pa. Super. Ct.), *app. denied*, 617 A.2d 1275 (Pa. 1992), the plaintiff-contractor entered into an agreement with a municipal authority to reconstruct a dam. The municipal authority entered into a separate agreement with an engineering firm for the design and supervision of the project. As a result of negligence on the part of the engineering firm, the project encountered substantial difficulties and delays. The plaintiff-contractor attempted to assert a claim against the engineering firm for negligence, despite the absence of privity of contract. The plaintiff-contractor argued that the engineering firm was responsible under Pennsylvania law for deficiencies in its design and specifications. *Id.* at 76, n.3. The Pennsylvania Superior Court agreed that engineers were liable for any negligence in connection with the design and specifications, but noted that such liability was limited to "the person with whom the person contracted to draw the plans or specifications." *Id*. *See also Sadtler v. Jackson-Cross Co.*, 587 A.2d 727 (Pa. Super. Ct. 1991) (finding no professional negligence claim against real estate appraiser could be maintained in the absence of privity).

The Gallo Defendants, in their answer to the Charltons' complaint, denied that Global acted for them in providing title insurance. The Charltons contracted with Global for preparation and filing of a mortgage securing the Balloon Note. The Gallo

Defendants failed to demonstrate that they were in privity of contract with Global with respect to the complained-of mortgage. Because Global did not owe a duty to the Gallo Defendants, there is no breach for which the Charltons may be held vicariously liable.

The Gallo Defendants also sought to hold the Charltons liable for the conduct of the Charltons' counsel in the Delaware mortgage foreclosure action. Pennsylvania recognizes the importance of an attorney's independence in handling a lawsuit on behalf of his or her client. *See Commonwealth v. Nagel*, 371 A.2d 983, 985 (Pa. Super. Ct. 1977); *see also Ingersoll-Rand Equip. Corp. v. Transportation Ins. Co.*, 963 F. Supp. 452, 455 (M.D. Pa. 1997). A lawyer in private practice, retained to handle a particular matter, acts on behalf of his or her client in the capacity of an independent contractor, not an employee. *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 853 (3d Cir. 1996). The lawyer's negligence cannot be imputed to the client. *Steiner v. Bell of Pa.*, 626 A.2d 584, 586 (Pa. Super. Ct. 1993); *Lorah v. Luppold Roofing Co., Inc.*, 622 A.2d 1383, 1385 (Pa. Super. Ct. 1993). "[T]he law is clear that the attorney owes no duty of care to the adverse party but only to his own client." *Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. Ct. 1984). Because Pennsylvania law regarding negligence bars the Gallo Defendants' claim, we need not reach the other grounds for dismissal proffered by the Charltons. Count IV of the amended counterclaim fails to state a claim, and has been dismissed.

### F. Tortious Interference with Contract

The Gallo Defendants alleged that the Charltons, by contracting with Global to prepare and file the mortgage securing the Balloon Note, tortiously interfered with the Gallo Defendants' contract with Global. The Charltons claimed that the Gallo Defendants did not have a contractual relationship with Global, and that Count VI was barred by the statute of limitations.

Under Pennsylvania law, the statute of limitations for tortious interference with contract is two years. 42 Pa. Cons. Stat. Ann. § 5524(3); *see also Bender v. McIlhatten*, 520 A.2d 37, 39-40 (Pa. Super. Ct. 1987) (42 Pa. Cons. Stat. Ann. § 5524(3) governs tortious interference with contract rights); *accord Mazzanti v. Merck and Co.*, 770 F.2d 34, 35 (3rd Cir. 1985). The limitations period begins to run from the time the plaintiff knows or has reason to know of the injury on which the action is based. *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *Fine v. Cheecio*, 870 A.2d 850, 861 (Pa. 2005).

Settlement on Tree Service's acquisition of the Pennsylvania property was November 9, 2006. The mortgage on Mr. Gallo's individual residence was executed the same date. The mortgage document clearly lists Mr. Gallo's residence with the Pennsylvania properties subject to the mortgage. The limitations period began to run on November 9, 2006, the date Mr. Gallo executed the mortgage on behalf of Tree Service. The Gallo Defendants did not file the amended counterclaim alleging tortious interference with contract until December 14, 2009, more than a year after the expiration of the limitations period. The claim for tortious interference was filed beyond the limitations period, and Count VI of the amended counterclaim has been dismissed.

### G. Unjust Enrichment

The Gallo Defendants claimed that the Charltons were unjustly enriched when they received the proceeds of the $1 million loan from Wilmington Savings Fund Society[1] and the $250,000 Balloon Note, because the Pennsylvania property was not worth more than $875,000. The Charltons argued that where the obligations of the parties are set forth in a written agreement, the equitable doctrine of unjust enrichment is inapplicable.

---

[1] After closing costs, the Charltons received cash proceeds of $310,678.63 out of the $1 million loan to the Gallo Defendants.

An action based on unjust enrichment is an equitable action sounding in quasi-contract, a contract implied in law. *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n. 7 (Pa. 2007). A party claiming unjust enrichment must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider. *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987). Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such benefits by the defendant; and (3) it would be inequitable for the defendant to retain the benefit without payment of value. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).

The doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement, no matter how "harsh the provisions of such contracts may seem in the light of subsequent happenings." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (noting that by its nature, unjust enrichment is inapplicable where a written or express contract exists). Because the price of the property was set by a written agreement between the parties, there can be no equitable action for unjust enrichment, and Count VII of the amended counterclaim has been dismissed.

## IV. CONCLUSION

The Charltons' motion to dismiss the Gallo Defendants' amended counterclaim has been granted by Order dated January 25, 2010, for the reasons explained above. All counts of the Gallo Defendants' amended counterclaim have been dismissed with prejudice.

/s/ Norma L. Shapiro

J.